UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No. 1:23-cr-209 (CKK) |
| | : | |
| v. | : | |
| | : | |
| **KENNETH WAYNE FULLER,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTIONS *IN LIMINE IN GLOBO***

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this reply to the defendant's opposition, ECF No. 84, to the United States' Motions *in Limine*. In that opposition, the defendant, Kenneth Fuller, addresses four areas addressed by the government's motions *in limine* (1) motion *in limine* regarding location of U.S. Capitol Police surveillance cameras (ECF No. 79); (2) cross-examination of United States Secret Service witness (ECF No. 79); (3) introduction of statements by Mr. Fuller and his co-defendants (ECF No. 81); and (4) regarding action or inaction of the police (ECF No. 80).

**I.      Location of U.S. Capitol Police Surveillance Cameras**

In his opposition, Fuller does not contest the inapplicability of using the camera map at trial nor does he intend to question witnesses about the exact location of surveillance cameras. However, the defendant continues to object to the introduction of CCTV footage on the grounds that such evidence is irrelevant and of *de minimis* probative value. ECF No. 84 at 1-2 (citing to ECF No. 77); *see also* ECF No. 86. Because the government has previously addressed the defendant's relevance and prejudice objections, ECF No. 86, the government moves to incorporate by reference its opposition to the objections based on the same premises.

II.     **Cross-Examination of United States Secret Service Witness**

Next, Fuller objects to the government's motion *in limine* "to preclude any information about any details of the location of former Vice President Pence" because he claims such information is relevant to "whether or not the defendant was entering or remaining in a restricted area where the Vice President was temporarily visiting." ECF No. 84 at 2-3. None of the offenses charged require proof, for example, that the Vice President was in danger or that any defendant was the cause of danger. The government asks the Court to preclude all questioning that would inquire of the witness in any greater detail beyond whether the former Vice President was at the Capitol or would temporarily be visiting the Capitol, during the relevant period. This is as far as the government's burden of proof extends. *See* ECF No. 46, Count Two and Count Three. Any further questions about the former Vice President's precise movements within the Capitol or the timing of those movements is unnecessary. Put differently, for purposes of Section 1752 charges, only the former Vice President's presence in the Capitol or whether he would be temporarily visiting the Capitol is relevant. Precisely how and where he was protected at each moment of January 6, 2021, is not relevant. *Cf. United States v. Griffith*, Crim. No. 21-CR-244 (CKK), 2023 U.S. Dist. LEXIS 26709, at *11 (D.D.C. Feb. 16, 2023) (Kollar-Kotelly, J.) (once evidence establishes Capitol grounds were restricted, whether additional measures could have been taken to further restrict area is not relevant).

As such—and given the security risks at hand should the defendants be allowed greater latitude in their inquiry—this Court should reject the defendant's arguments in opposition and grant the Government's motion *in limine* seeking to limit any cross examination of the anticipated U.S. Secret Service witness. Assuming, without conceding, that the evidence to be excluded is

marginally relevant, such relevance is substantially outweighed by the danger of confusion of the issues, mini-trials, undue delay, and waste of time. *See United States v. Mohammed*, 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005) (finding that information having broader national security concerns can be excluded under Rule 403 because its tendency to confuse the issues, mislead the jury, create side issues or a mini-trial can result in undue prejudice that substantially outweighs any probative value).

Alternatively, if the Court believes that it is necessary to permit the defense to present evidence or cross-examine witnesses about the USCP or USSS procedures, the United States requests that the Court conduct a hearing *in camera* to resolve the issue. Courts have found that *in camera* proceedings are appropriate in circumstances where security concerns like these are present. *See United States v. Nixon*, 418 U.S. 683, 714 (1974) (affirming district court's order for in camera inspection of subpoenaed presidential materials); *United States v. Kampiles*, 609 F.2d 1233, 1248 (7th Cir. 1979)("It is settled that in camera . . . proceedings to evaluate bona fide Government claims regarding national security information are proper.").

### III.    Introduction of the Defendants' Statements

Fuller challenges the admission of his statements because he cannot address any potential *Bruton* concerns. ECF No. 84 at 3-4. In *Bruton v. United States*, 391 U.S. 123, 126-27 (1968), the Supreme Court ruled that the Sixth Amendment's confrontation clause precluded the admission of a non-testifying co-defendant's co-implicating confession, because the devastating effect of that evidence would make it extremely difficult for a jury to obey the trial court's limiting instruction. Neither Kenneth Fuller nor his co-defendants were interviewed at the time of their arrest. The government's case-in-chief will introduce statements made by the defendant on January 6, 2021

as captured in numerous contemporaneous videos (i.e., BWC and open-source recordings) and statements posted to social media in the days after the riot. Consequently, *Bruton* is not implicated.

### IV. Evidence of Police Action or Inaction and Fuller's Intent

The government's position seeking to exclude improper arguments about the entrapment and other public authority defenses, ignorance of the law, and inaction by law enforcement, is consistent with rulings from other judges in this District. *See e.g.*, *United States v. Rhine*, Crim. No. 21-CR-687 (RC), ---F. Supp. 3d---, 2023 U.S. Dist. LEXIS 27764, at *34-35 (D.D.C. Feb. 17, 2023) (Contreras, J.) (holding "evidence of law enforcement inaction or removal of barriers is relevant and admissible only to the extent that Defendant was aware of it or reasonably could have perceived it, or that it occurred in close proximity to the locations where Defendant is alleged to have entered or been in the Capitol before he was there such that it reasonably bears on whether the area was restricted, as established through presentation of evidence or by proffer to the Court"); *United States v. Williams,* Crim No. 21-CR-377 (BAH), ECF No. 87, pp. 3-4 (D.D.C. 2022) (Howell, J.) (before introducing evidence of police inaction before jury, defendant "must somehow establish his awareness of the alleged inaction" in "any number of ways").

Fuller asserts his right to put on a defense, which would apparently include evidence "regarding the actions or inactions of law enforcement personnel." ECF No. 84 at 4. The government does not object to the introduction of this type of evidence if it has a proper foundation and is offered for a purpose that is proper. Evidence of Fuller's intent is certainly central to the contested trial issues and may be informed by what the defendant characterizes as police inaction. In the court's order in *United States v. Michael Oliveras*, which allowed the motion in full, Chief Judge Howell noted that law enforcement officers "cannot unilaterally abrogate statutory law" in

4

the discussion of the entrapment by estoppel defense. *United States v. Michael Oliveras,* 21-cr-738 (BAH), ECF 28 (D.D.C. Oct. 26, 2022). The court next turned to the question of "alleged inaction by law enforcement somehow caus[ing] defendant's conduct to be lawful." *Id.* at 3. Similar to its reasoning with the entrapment by estoppel defense, the court noted "[s]ettled caselaw makes clear that law officer inaction—whatever the reason for the inaction—cannot sanction unlawful conduct." *Id.* (citing cases). The government's motion *in limine* simply seeks to ensure that any evidence the defendant may seek to offer regarding his subjective belief that the police allowed his conduct satisfy foundational prerequisites. Fuller must establish that, along with the obvious police lines and police orders restricting access to the Capitol grounds[1], he saw, heard, or perceived the police action (or "inaction") in order for it to be relevant to his subjective or objective perception. *United States v. Chrestman*, 525 F. Supp. 3d 14, 31-32 (D.D.C. 2021) (*quoting United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018) and noting that Supreme Court precedent "unambiguously forecloses the availability of the [estoppel] defense in cases where a government actor's statements constitute 'a waiver of law' beyond his or her lawful authority."). Evidence of police inaction may be admissible if Fuller can establish that he was in a position to perceive it.

---

[1] The government concurs with the defendant that there is no evidence the defendants entered the U.S. Capitol Building.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant the government's motions *in limine*, or if the Court reserves ruling, to consider the above arguments when the relevant issues arise during trial.

Date: November 6, 2024

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Cytheria D. Jernigan*
CYTHERIA D. JERNIGAN
Assistant U.S. Attorney
D.C. Bar No. 494742
Detailed to the United States Attorney's Office
for the District of Columbia
601 D Street, NW
Washington, D.C. 20530
Phone: (318) 676-3611
Cytheria.Jernigan@usdoj.gov