UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | :  Case No.: 23-cr-209 (CKK) |
| | : |
| KENNETH FULLER, | : |
| | : |
| Defendant. | : |

## GOVERNNENT'S RESPONSE TO DEFENDANT'S MOTION FOR CHANGE OF VENUE, OR, IN THE ALTERNATIVE, EXPANDED *VOIR DIRE*

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's motion for change of venue or in the alternative, expanded *voir dire*. ECF No. 124. The defendant fails to establish that he "cannot obtain a fair and impartial trial" in this district, Fed. R. Crim. P. 21(a), and as such, the Court should deny his motion.[1] Moreover, the *voir dire* questions provided by the government, ECF No. 111, will help ensure an impartial jury, negating the need for any expanded *voir dire*.

---

[1] In addition to the D.C. Circuit's opinion affirming the denial of a motion to transfer venue in a January 6 case in *United States v. Webster*, 22-3064, 2024 WL 2712697, at *2 (D.C. Cir. May 28, 2024), judges on this Court have denied motions for change of venue in dozens of January 6 prosecutions, and no judge has granted a change of venue in a January 6 case. *See, e.g.*, *United States v. Ramey*, 22-cr-184, Minute Entry (D.D.C. Jan. 30, 2023) (DLF); *United States v. Eckerman, et al.*, 21-cr-623, Minute Order (D.D.C. Jan. 26, 2023) (CRC); *United States v. Pollock, et al.*, 21-cr-447, Minute Entry (D.D.C. Jan. 25, 2023) (CJN); *United States v. Gossjankowski*, 21-cr-12, ECF No. 114 (D.D.C. Jan. 25, 2023) (PLF); *United States v. Adams*, 21-cr-212, ECF No. 60 (D.D.C. Jan. 24, 2023) (ABJ); *United States v. Rhine*, 21-cr-687, ECF No. 78 (D.D.C. Jan. 24, 2023) (RC); *United States v. Oliveras*, 21-cr-738, ECF No. 52 (D.D.C. Jan. 17, 2023) (BAH); *United States v. Sheppard*, 21-cr-203, ECF No. 62 (D.D.C. Dec. 28, 2022) (JDB); *United States v. Samsel, et al.*, 21-cr-537, ECF No. 227 (D.D.C. Dec. 14, 2022) (JMC); *United States v. Gillespie*, 22-cr-60, ECF No. 41 (D.D.C. Nov. 29, 2022) (BAH); *United States v. Barnett*, 21-cr-38, ECF No. 90 (D.D.C. Nov. 23, 2022) (CRC); *United States v. Bender, et al.*, 21-cr-508, ECF No. 78 (D.D.C. Nov. 22, 2022) (BAH); *United States v. Sandoval*, 21-cr-195, ECF No. 88 (D.D.C. Nov. 18, 2022) (TFH); *United States v. Vargas Santos*, 21-cr-47, Minute Entry (D.D.C. Nov. 16, 2022) (RDM); *United States v. Nordean, et al.*, 21-cr-175, ECF No. 531 (D.D.C. Nov. 9, 2022) (TJK);

1

**LEGAL STANDARD**

The Constitution provides that "[t]he trial of all Crimes … shall be held in the State where the said Crimes shall have been committed." U.S. Const. Art. III, § 2, cl. 3. The Sixth Amendment similarly guarantees the right to be tried "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. But "when 'extraordinary local prejudice' prevents impartiality, courts must transfer the trial to a location where an impartial jury can be drawn." *United States v. Webster*, 22-3064, 2024 WL 2712697, at *2 (D.C. Cir. May 28, 2024) (citing *Skilling v. United States*, 561 U.S. 358, 378 (2010)). Yet "[p]rejudice across an entire jury pool can be presumed only in the extreme case, where prejudicial publicity so poisoned the proceedings that it was impossible for the accused to receive a fair trial by an impartial jury." *Id.* "The Supreme Court has found presumptive prejudice in only the rare case where a jury pool was

---

*United States v. Ballenger*, 21-cr-719, ECF. No. 75 (D.D.C. Oct. 28, 2022) (JEB); *United States v. Eicher*, 22-cr-38, ECF No. 34 (D.D.C. Oct. 20, 2022) (CKK); *United States v. Schwartz, et al.*, 21-cr-178, ECF No. 142 (D.D.C. Oct. 11, 2022) (APM); *United States v. Nassif*, 21-cr-421, ECF No. 42 (D.D.C. Sep. 12, 2022) (JDB); *United States v. Brock*, 21-cr-140, ECF No. 58 (D.D.C. Aug. 31, 2022) (JDB); *United States v. Jensen*, 21-cr-6, Minute Entry (D.D.C. Aug. 26, 2022) (TJK); *United States v. Seitz*, 21-cr-279, Minute Order (D.D.C. Aug. 17, 2022) (DLF); *United States v. Strand*, 21-cr-85, ECF No. 89 (D.D.C. Aug. 17, 2022) (CRC); *United States v. Williams*, 21-cr-618, ECF No. 63 (D.D.C. Aug. 12, 2022) (ABJ); *United States v. Herrera*, 21-cr-619, ECF No. 54 (D.D.C. August 4, 2022) (BAH); *United States v. Garcia*, 21-cr-129, ECF No. 83 (D.D.C. July 22, 2022) (ABJ); *United States v. Rusyn, et al.*, 21-cr-303, Minute Entry (D.D.C. July 21, 2022) (ABJ); *United States v. Bledsoe*, 21-cr-204, Minute Order (D.D.C. July 15, 2022) (BAH); *United States v. Calhoun*, 21-cr-116, Minute Order (D.D.C. July 11, 2022) (DLF); *United States v. Rhodes, et al.*, 22-cr-15, ECF No. 176 (D.D.C. June 28, 2022) (APM); *United States v. Williams*, 21-cr-377, Minute Entry (D.D.C. June 10, 2022) (BAH); *United States v. McHugh*, 21-cr-453, Minute Entry (D.D.C. May 4, 2022) (JDB); *United States v. Hale-Cusanelli*, 21-cr-37, Minute Entry (D.D.C. Apr. 29, 2022) (TNM); *United States v. Webster*, 21-cr-208, ECF No. 78 (D.D.C. Apr. 18, 2022) (APM); *United States v. Alford*, 21-cr-263, ECF No. 46 (D.D.C. Apr. 18, 2022) (TSC); *United States v. Brooks*, 21-cr-503, ECF No. 31 (D.D.C. Jan. 24, 2022) (RCL); *United States v. Bochene*, 21-cr-418, 2022 WL 123893, at *2 (D.D.C. Jan. 12, 2022) (RDM); *United States v. Fitzsimons*, 21-cr-158, Minute Order (D.D.C. Dec. 14, 2021) (RC); *United States v. Reffitt*, 21-cr-32, Minute Order (D.D.C. Oct. 15, 2021) (DLF); *United States v. Caldwell*, 21-cr-28, ECF No. 415 (D.D.C. Sept. 14, 2021) (APM).

so 'pervasively exposed' to prejudicial pretrial publicity about the defendant and the case that '[a]ny subsequent court proceedings in [that] community … [w]ould be but a hollow formality.'" *Id.* (citing *Rideau v. Louisiana*, 373 U.S. 723, 726 (1963)); *see also* Fed. R. Crim. P. 21(a) (requiring transfer to another district if "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there").

The primary safeguard of the right to an impartial jury is instead "an adequate *voir dire* to identify unqualified jurors." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992). Thus, the best course when faced with a pretrial publicity claim is ordinarily "to proceed to voir dire to ascertain whether the prospective jurors have, in fact, been influenced by pretrial publicity." *United States v. Campa*, 459 F.3d 1121, 1146 (11th Cir. 2006) (en banc). "[I]f an impartial jury actually cannot be selected, that fact should become evident at the voir dire." *United States v. Haldeman*, 559 F.2d 31, 63 (D.C. Cir. 1976) (en banc) (per curiam). And, after *voir dire*, "it may be found that, despite earlier prognostications, removal of the trial is unnecessary." *Jones v. Gasch*, 404 F.2d 1231, 1238 (D.C. Cir. 1967).

## ARGUMENT

The defendant's motion for a change of venue lacks merit. The defendant fails to demonstrate at any point that prejudice can be presumed, and therefore his motion should be denied. Indeed, in *Webster*, the D.C. Circuit affirmed the denial of a similar motion to change venue brought by a January 6 defendant, who in-part relied on January 6 media coverage in his appeal. Moreover, the defendant's proposed expanded *voir dire* is unnecessary, and the additional questions provided by the defendant are repetitive, vague, ambiguous, often unrelated to the facts and crimes at issue, and any concerns are already covered by the draft questions provided by the government in ECF No. 111.

**I.     Yesterday Judge Moss Denied a Similar Motion To Transfer Venue Or To Expand *Voir Dire* Because of the President And Attorney General's Comments**

The government draws the Court's notice to a similar motion filed on January 6, 2025, in *United States v. Wise*, 23-cr-184 (RDM), ECF No. 172. There too the defendant argued that venue should be transferred or expanded *voir dire* should be allowed because of President Biden and Attorney General Garland's recent comments on January 6. *See, e.g.*, *id* at 1. On January 8, Judge Moss denied this motion.

**II.    Any Supposed Pretrial Publicity Related To President Biden And Attorney General Garland's Comments On January 6 Does Not Support A Presumption Of Prejudice In This District.**

The defendant contends that a change of venue is warranted based on pretrial publicity related to President Biden and Attorney General Garland's recent comments on January 6. ECF No. 124 at 6-11. As in *Webster,* where the D.C. Circuit observed that "nothing in the record suggests that the District's jury pool had any preconceived notions about Webster or his guilt or innocence, or even knew who he was," the defendant's argument here fails. *Webster*, 2024 WL 2712697, at *3. "The mere existence of intense pretrial publicity is not enough to make a trial unfair, nor is the fact that potential jurors have been exposed to this publicity." *United States v. Childress*, 58 F.3d 693, 706 (D.C. Cir. 1995); *see Murphy v. Florida*, 421 U.S. 794, 799 (1975) (juror exposure to "news accounts of the crime with which [a defendant] is charged" does not "alone presumptively deprive[] the defendant of due process"). Indeed, "every case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits." *Reynolds v. United States*, 98 U.S. 145, 155–56 (1878). Thus, the "mere existence of any preconceived notion as to the guilt or innocence of an accused, without more," is insufficient to establish

4

prejudice. *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.*

The Supreme Court has recognized only a narrow category of cases in which prejudice is presumed to exist without regard to prospective jurors' answers during *voir dire*. *See Rideau*, 373 U.S. 723. In *Rideau*, the defendant's confession—obtained while he was in jail and without an attorney present—was broadcast three times shortly before trial on a local television station to audiences ranging from 24,000 to 53,000 individuals in a parish of approximately 150,000 people. *Id.* at 724. The Court concluded that, "to the tens of thousands of people who saw and heard it," the televised confession "in a very real sense *was* Rideau's trial—at which he pleaded guilty to murder." *Id*. at 726. Thus, the Court "d[id] not hesitate to hold, without pausing to examine a particularized transcript of the voir dire," that these "kangaroo court proceedings" violated due process. *Id.* at 726–27.

Since *Rideau*, the Supreme Court has emphasized that a "presumption of prejudice ... attends only the extreme case," *Skilling*, 561 U.S. at 381, and the Court has repeatedly "held in other cases that trials have been fair in spite of widespread publicity," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976). The D.C. Circuit described the standard as a "very high bar." *Webster,* 2024 WL 2712697, at *3. In the half century since *Rideau*, the Supreme Court has never presumed prejudice based on pretrial publicity. *But see Estes v. Texas*, 381 U.S. 532 (1965) (presuming prejudice based on media interference with courtroom proceedings); *Sheppard v. Maxwell*, 384 U.S. 333 (1966) (same). In fact, in addition to the recent ruling in *Webster*, courts have declined to transfer venue in some of the most high-profile prosecutions in recent American history. *See In re Tsarnaev*, 780 F.3d 14, 15 (1st Cir. 2015) (per curiam) (capital prosecution of Boston Marathon bomber); *Skilling*, 561 U.S. at 399 (fraud trial of CEO of Enron Corporation);

5

*United States v. Yousef*, 327 F.3d 56, 155 (2d Cir. 2003) (trial of participant in 1993 World Trade Center bombing); *United States v. Moussaoui*, 43 F. App'x 612, 613 (4th Cir. 2002) (per curiam) (unpublished) (terrorism prosecution for conspirator in September 11, 2001 attacks); *Haldeman*, 559 F.2d at 70 (Watergate prosecution of former Attorney General John Mitchell and other Nixon aides).

In *Skilling*, the Supreme Court considered several factors in determining that prejudice should not be presumed when former Enron executive Jeffrey Skilling was tried in Houston, where Enron was based. *Skilling*, 561 U.S. at 382–83. First, the Court considered the "size and characteristics of the community." *Id.* at 382. Unlike *Rideau*, where the murder "was committed in a parish of only 150,000 residents," Houston was home to more than 4.5 million people eligible for jury service. *Id.* at 382. Second, "although news stories about Skilling were not kind, they contained no confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight." *Id.* Third, "over four years elapsed between Enron's bankruptcy and Skilling's trial," and "the decibel level of media attention diminished somewhat in the years following Enron's collapse." *Id.* at 383. "Finally, and of prime significance, Skilling's jury acquitted him of nine insider-trading counts," which undermined any "supposition of juror bias." *Id.*

Although these *Skilling* factors are not exhaustive, courts have found them useful when considering claims of presumptive prejudice based on pretrial publicity. *See, e.g.*, *In re Tsarnaev*, 780 F.3d at 21–22; *United States v. Petters*, 663 F.3d 375, 385 (8th Cir. 2011). And contrary to the defendant's contention, those factors do not support a presumption of prejudice in this case.

### A. Size and characteristics of the community

The defendant suggests that an impartial jury cannot be found in Washington, D.C. despite

6

the District's population of nearly 700,000. ECF No. 124 at 8-9. But *Skilling* approvingly cited a state case in which there was "a reduced likelihood of prejudice" because the "venire was drawn from a pool of over 600,000 individuals." *Skilling*, 561 U.S. at 382 (quoting *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1044 (1991)). And *Webster* ultimately forecloses this argument. As the D.C. Circuit found:

> The District's size is no impediment to producing a fair jury. It consists of more than 600,000 individuals. *Contrast Rideau*, 373 U.S. at 724 (presuming prejudice when news coverage blanketed community of 150,000). "Given this large, diverse pool of potential jurors," there is no basis to conclude "12 impartial individuals could not be empaneled."

2024 WL 2712697, at *4 (quoting *Skilling*, 561 U.S. 382).

Failing to argue that the jury pool is too small to mitigate potential president, the defendant also contends that a D.C. jury cannot be impartial because of various characteristics of the District's jury pool: not only its supposed news consumption, but also the impact of January 6 on D.C. residents, and the prevalence of persons employed by Congress an federal law enforcement and in the District. ECF No. 124 at 8-9. *Webster* rejected similar claims about the jury pool and the makeup of the District's electorate, and none of the defendant's claim has any merit. 2024 WL 2712697, at *4.

        1. <u>The impact of January 6 on Washington D.C. does not support a change of venue.</u>

The defendant contends that a D.C. jury could not be impartial because District residents have been particularly affected by events surrounding January 6. ECF No. 124 at 9. But January 6 is now over four years in the past. Many D.C. residents do not live or work near the Capitol where the roads were closed and the National Guard was deployed. There is no reason to believe that the District's entire population of nearly 700,000 people was so affected by these events that the Court cannot seat an impartial jury here.

7

Indeed, courts routinely conclude that defendants can receive a fair trial in the location where they committed their crimes, despite the fact that members of the community were victimized. *See In re Tsarnaev*, 780 F.3d 14, 15 (1st Cir. 2015) (Boston Marathon bombing); *Skilling*, 561 U.S. at 399 (Enron collapse); *United States v. Yousef*, 327 F.3d 56, 155 (2d Cir. 2003) (1993 World Trade Center bombing); *United States v. Moussaoui*, 43 F. App'x 612, 613 (4th Cir. 2002) (per curiam) (unpublished) (September 11, 2001 attacks, including on the Pentagon). In *Skilling*, the Supreme Court rejected the contention that Enron's "sheer number of victims" in the Houston area "trigger[ed] a presumption of prejudice." *Skilling*, 561 U.S. at 384 (quotation omitted). "Although the widespread community impact necessitated careful identification and inspection of prospective jurors' connections to Enron," the voir dire was "well suited to that task." *Id*. In this case too, *voir dire* can adequately identify those D.C. residents who were so affected by January 6 that they cannot impartially serve as jurors. There is no reason to presume prejudice.

    2. <u>The number of Congressional or law enforcement employees who reside in the District of Columbia does not support a change of venue.</u>

The defendant also argues in passing that the Court should presume prejudice in this District because the jury pool would contain a high percentage of persons employed by or "tied to" Congress or federal law enforcement. ECF No. 124 at 8. But the defendant does not (1) provide any support for his proposition that Washington, D.C. is overwhelmingly filled with Congressional aides and law enforcement or (2) that even if this were true, how having such a job would render a person incapable of serving as an impartial juror. Although some Congressional and law enforcement personnel, such as the U.S. Capitol Police and Congressional staff who were present that day, were affected by the events of January 6, many others were neither directly nor indirectly impacted; many federal law enforcement personnel were nowhere near the Capitol on January 6. There is therefore no reason to believe that federal law enforcement personnel, or

8

persons vaguely "tied to" Congress with little or no connection to the events at the Capitol could not be impartial in this case. *See United States v. Bochene*, 21-cr-418 (RDM), 2022 WL 123893, at *2 (D.D.C. Jan. 12, 2022) (January 6 defendant's claim that federal employees would "have a vested interest in supporting their employer" was "exactly the kind of conjecture that is insufficient to warrant transfer prior to jury selection"). And even assuming (incorrectly) that every law enforcement officer or person "tied to" Congress is affected by improper bias, the Court could draw a jury from those District residents who are not employed by the federal government.

### B.    Nature of the pretrial publicity

As to the second factor under *Skilling*, this case does not involve a "confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight," which would render pretrial publicity prejudicial. 561 U.S. at 382. As the Supreme Court has made clear, news stories that are "not kind," *id.*, or are "hostile in tone and accusatory in content," *Haldeman*, 559 F.2d at 61, do not alone raise a presumption of prejudice. In *Webster,* the D.C. Circuit found that two news articles which focused on the facts of the defendant's case were insufficient. "Both simply recite the facts of the allegations confronting Webster, his surrender to authorities, and the details of his bond hearing. They also include a counternarrative from Webster's defense attorney…. Without more, such routine and objective press coverage of a criminal prosecution does not trench upon the defendant's right to a fair trial." *Webster*, 2024 WL 2712697, at *3. Here, as in *Skilling*, *Haldeman*, and *Webster*, the minimal local Minnesota news coverage of the defendant is "neither as inherently prejudicial nor as unforgettable as the spectacle of Rideau's dramatically staged and broadcast confession." *Id.*[2]

---

[2] If the defendant is concerned with any news coverage discussing him specifically, transferring venue to Minnesota would presumably be more problematic.

Similarly, while the defendant asserts that a fair trial cannot be had in D.C. because of the volume of general news coverage of January 6, ECF No. 124 at 9-10, even "massive" news coverage of a crime does not require prejudice to be presumed. *Haldeman*, 559 F.2d at 61. Unlike most cases involving pretrial publicity, where the news coverage focuses on the responsibility of a single defendant (as in *Rideau* or *Tsarnaev*) or a small number of codefendants (as in *Skilling* and *Haldeman*), the events of January 6 involved thousands of participants and have so far resulted in charges against more than 1,400 people. The Court can guard against any spillover prejudice from the broader coverage of January 6 by conducting a careful *voir dire* and properly instructing the jury about the need to determine a defendant's individual guilt, just as Judge Mehta did in *Webster*. *Webster*, 2024 WL 2712697, at *6 (describing that *voir dire* as a "searching inquiry"). And, in any event, any threat of such spillover prejudice is not limited to Washington, D.C. because much of the news coverage of January 6 has been national in scope. *See Haldeman*, 559 F.2d at 64 n.43 (observing that "a change of venue would have been of only doubtful value" where much of the news coverage was "national in [its] reach" and the crime was of national interest); *United States v. Bochene*, 21-cr-418 (RDM), 2022 WL 123893, at *3 (D.D.C. Jan. 12, 2022) ("The fact that there has been 'ongoing media coverage' of the breach of the Capitol and subsequent prosecutions, 'both locally and nationally,' means that the influence of that coverage would be present 'wherever the trial is held.'" (quoting *Tsarnaev*, 780 F. 3d at 22)). Of course, to the government's knowledge, there is *no* national media coverage of the defendant, and none of the media sources which the defendant claims, without any basis, that the Washington, D.C. jury pool allegedly consumes, have covered the defendant either.[3]

---

[3] The sole basis for the defendant's broad claims regarding the Washington, D.C. jury pool's news consumption is a blog post graphic on the website "Visual Capitalist" from 2021. ECF No. 124 at 10, n.8. This post, of course, is not recent, nor does it disclose what type of coverage Washington,

Lastly, as to any alleged impact which statements made by the President, the Attorney General, or any other public official may have, statements such as the ones cited by the defendant, ECF No. 124 at 3-5, were reported across the entire country, and exposure to these statements is hardly unique to Washington, D.C. Nor do any of those statements pertain to the defendant specifically. But, in any event, harsh condemnation of a defendant's actions is not uncommon in high-profile criminal cases, and it does not suffice to establish prejudice.

## C. Passage of time before trial

In *Skilling*, the Court considered the fact that "over four years elapsed between Enron's bankruptcy and Skilling's trial." *Skilling*, 561 U.S. at 383. In this case, four years have already elapsed since the events of January 6. This is far more than in *Rideau*, where the defendant's trial came two months after his televised confession. *Rideau*, 373 U.S. at 724. In *Webster,* the D.C. Circuit was unpersuaded by defendant's claim about the passage of time—there, only 12 months had elapsed since January 6, far less than the time here. *Webster*, 2024 WL 2712697, at *4.

While the defendant claims that coverage of January 6 has increased, ECF No. 124 at 5, 10, he again—as throughout his motion—provides no basis, support, or evidence for this proposition. Of course, the defendant's statement defies logic and common sense given the level of coverage of January 6 in its immediate aftermath. Moreover, as noted, this coverage has not extended to the defendant. Thus, like Webster, the defendant "puts the cart before the horse: He must first show prejudice before arguing that the prejudice did not dissipate. He has failed to do so." *Webster*, 2024 WL 2712697, at *4.

\*\*\*

---

D.C. residents allegedly reviewed from these sources; whether it is sports coverage, the weather, advertisements, or even the funny pages.

In sum, the defendant's unsupported and inaccurate claims fail to make out a case for any purported prejudice, never mind a showing that "prejudicial publicity so poisoned the proceedings that it was impossible for the accused to receive a fair trial by an impartial jury[. ]" *Webster*, 102 F.4th at 479. As such, his argument fails and his motion to transfer venue should be rejected.

### III.    *Voir Dire* Is the Appropriate Means of Selecting an Impartial Jury.

Even if there was a threat of prejudice, which, as discussed above, there is not, the Supreme Court and the D.C. Circuit have long made clear that a careful *voir dire* is the appropriate way to address prejudicial pretrial publicity, except in those extreme cases where prejudice is presumed. *See Skilling*, 561 U.S. at 381–82. In *Webster*, the Court rejected an argument that the *voir dire* in that January 6 case was inadequate to secure an impartial jury. 2024 WL 2712697. It necessarily follows that the Circuit did not believe *voir dire* is inadequate *ex ante.*

The Supreme Court observed in *Skilling* that *voir dire* was "well suited to th[e] task" of probing the crime's "widespread community impact." 561 U.S. at 384. And the Court has said that "[i]t is fair to assume that the method we have relied on since the beginning"—*voir dire*— "usually identifies bias." *Patton v. Yount*, 467 U.S. 1025, 1038 (1984) (citing *United States v. Burr*, 25 F. Cas. 49, 51 (C.C.D. Va. 1807) (Marshall, C.J.)). Similarly, the D.C. Circuit has said that "voir dire has long been recognized as an effective method of routing out [publicity-based] bias, especially when conducted in a careful and thoroughgoing manner." *In re Nat'l Broadcasting Co.*, 653 F.2d 609, 617 (D.C. Cir. 1981); *see Haldeman*, 559 F.2d at 63 ("[I]f an impartial jury actually cannot be selected, that fact should become evident at the voir dire.").

At this point, a significant number of January 6 cases have proceeded to jury trials, and the Court in each of those cases has been able to select a jury without undue expenditure of time or effort. *See Murphy*, 421 U.S. at 802-03 ("The length to which the trial court must go to select

jurors who appear to be impartial is another factor relevant in evaluating those jurors' assurances of impartiality."); *Haldeman*, 559 F.2d at 63 (observing that "if an impartial jury actually cannot be selected, that fact should become evident at the voir dire"). The D.C. Circuit affirmed the adequacy of this *voir dire* process in *Webster*. *Webster,* 2024 WL 2712697, at *5.[4]

### IV.  The Defendant's Proposed Additional *Voir Dire* Questions Are Repetitive, Vague, Ambiguous, and Unnecessary

The government repeats its prior objections to certain additional *voir dire* questions prior requested by the defendant as repetitive, vague, ambiguous, and unnecessary. ECF No. 111 at 7-8. As far as the new questions the defendant proposes in the instant motion, these are untimely by over a month and should be rejected on that basis alone. President Biden and Attorney General Garland's recent statements on January 6, 2025, do not in any way divert from public statements made in the past. If such statements required additional *voir dire* questions, the time for the defendant to request them was by the Court-ordered date of December 2, 2024. The two op-ed pieces the defendant now cites did not change the facts in any material way.

If the Court does entertain the defendant's late request for additional questions, the government objects to each of them for the following reasons:

---

[4] In *Webster*, the Court individually examined 53 jurors and qualified 35 of them (or 66%), *Webster*, 21-cr-208, ECF No. 115 at 6, though it later excused one of those 35 based on hardship, *Webster*, 21-cr-208, ECF No. 114 at 217-18. The Court asked all prospective jurors whether they had "strong feelings" about the events of January 6 or about the former President that would "make it difficult for [the prospective juror] to serve as a fair and impartial juror in this case." *Webster*, 21-cr-208, ECF No. 113 at 19. During individual voir dire, the Court followed up on affirmative answers to clarify whether prospective jurors could set aside their feelings and decide the case fairly. *See, e.g., id.* at 32–33, 41–42, 54–56, 63, 65–66. Only 10 out of 53 prospective jurors (or about 19%) were stricken based on a professed or imputed inability to be impartial, as opposed to some other reason.[4] The *Webster* Court observed that this number "was actually relatively low" and therefore "doesn't bear out the concerns that were at root in the venue transfer motion" in that case. *Webster*, 21-cr-208, ECF No. 115 at 7.

39. The government objects to this question as inappropriate. The crimes the defendant is charged with are not related to attending protests. Moreover, the question is vague and ambiguous, and inappropriately probes the jurors' pasts in ways untethered to this case.

40. The government objects to this question as inappropriate. The crimes the defendant is charged with are not related to politics or any individuals' views about the 2024 Presidential election.

41. The government objects to this question as repetitive of question 31. The government also objects to this question as inappropriate since the crimes the defendant is charged with are not related to politics or any individuals' views about the 2024 Presidential election. Moreover, the question is vague and ambiguous.

42. The government objects to this question as repetitive of question 31.

43. The government objects to this question as repetitive of question 31.

43 (second #43; the defendant's new proposal repeats 43). The government objects to this question as repetitive of question 30.

44. The government objects to this question as repetitive of question 31. Moreover, the question is extremely overbroad and not targeted to appropriate areas of concern.

45. The government objects to this question as repetitive of question 31. Moreover, this is inappropriate and unrelated to the substance of any relevant fact or crime alleged in this matter.

46. The government objects to this question as repetitive of question 31. Moreover, this is inappropriate and unrelated to the substance of any relevant fact or crime alleged in this matter. This question is also repetitive of question 45.

## CONCLUSION

The defendant fails to establish that he "cannot obtain a fair and impartial trial" in this district, Fed. R. Crim. P. 21(a), or that any expanded *voir dire* is necessary. The Court should reject the defendant's motion.

Date: January 9, 2024

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES
                                        United States Attorney
                                        D.C. Bar No. 481052

By:                */s/ Matthew E. Vigeant*
                                        MATTHEW E. VIGEANT
                                        Assistant United States Attorney
                                        D.C. Bar No. 144722
                                        U.S. Attorney's Office for the District of Columbia
                                        601 D Street, N.W.,
                                        Washington, D.C. 20530
                                        Phone: (202) 252-2423
                                        Email: Matthew.Vigeant@usdoj.gov

                                        CYTHERIA D. JERNIGAN
                                        Assistant U.S. Attorney
                                        D.C. Bar No. 494742
                                        Detailed to the United States Attorney's Office
                                        for the District of Columbia
                                        601 D Street, NW
                                        Washington, D.C. 20530
                                        Phone: (318) 676-3611
                                        Cytheria.Jernigan@usdoj.gov