UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 1:23-cr-209 (CKK) |
| | : | |
| v. | : | |
| | : | |
| KENNETH WAYNE FULLER, and | : | |
| CALEB KENNETH FULLER, | : | |
| | : | |
| Defendants. | : | |

### UNITED STATES' RESPONSE TO DEFENDANT'S FIFTH MOTION *IN LIMINE* TO EXCLUDE CERTAIN OPEN-SOURCE VIDEOS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Kenneth Fuller's fifth motion *in limine* to exclude certain open-source videos and photographs. ECF No. 136. First, the defendant's motion is late; Kenneth Fuller offers no explanation for why he did not raise this fully developed issue at any point before Day Three of trial, when the government shared its exhibits as early as December 2 in the case of Exhibits 9-9E. Second, the defendant's authenticity argument is premature since the government has not even called its first witness, so it has had no opportunity to lay a foundation to authenticate the exhibits. In any event, ignoring that the motion is simultaneously late and premature, the government's witnesses will properly authenticate the challenged videos and photographs.  See *United States v. Crawford*, 23-cr-426 (JEB), June 18, 2024 Tr. at 3:8-5:9 (rejecting a nearly identical motion *in limine* from a January 6 defendant). Third, any purported prejudice in these exhibits is greatly outweighed by their probative value. Fourth, while the defendant provides no argument for why Government's Exhibit 5 constitutes hearsay, because the exhibit is not an out of court statement, it is not hearsay. Therefore the defendant's motion should be denied.

I. **The Government's Burden of Proof for Authentication is Slight**

"As a general rule, tangible evidence such as photographs must be properly identified or authenticated before being admitted into evidence at trial." *United States v. Blackwell*, 694 F.2d 1325, 1329 (D.C. Cir. 1982) (citations omitted). To satisfy this requirement, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Rule 901(b) provides a non-exhaustive list of examples of methods for showing authenticity. Those include, as relevant here:

> (1) Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be. . . .
> (3) Comparison by … the Trier of Fact. A comparison with an authenticated specimen by … the trier of fact.
> (4) Distinctive Characteristics and the Like. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances. . . .

Fed. R. Evid. 901(b)(1), (3), (4).

Establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992). *See also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]") (citation and quotation marks omitted). Rule 901 "requires only a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases). *See also, e.g., United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely . . . the process of presenting sufficient evidence to make out a prima facie case that the

proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a *prima facie* showing is required"). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the jury." *Vidacek*, 553 F.3d at 349. *See also, e.g.*, *Belfast*, 611 F.3d at 819 ("Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a prima facie showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). *See also, e.g.*, *United States v. Broomfield*, 591 F. App'x 847, 851 (11th Cir. 2014) (unpublished) ("Authentication may be established 'solely through the use of circumstantial evidence.'") (quoting *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) ((quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)). *See also, e.g.*, *United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that "[a]nyone could have used the defendants' Facebook accounts, just as the pictures could have depicted the men smoking tobacco cigars, and 'getting

high' could have been a reference to skydiving," but that there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts about using marijuana"); *Broomfield*, 591 F. App'x at 852 (finding sufficient evidence of authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").

In sum, the standard for authenticity is *only* that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Ev. 901(a). This is a lower standard than requiring that the government prove the challenged exhibits are what they are claimed to be. Rather, as long as there is a basis to support *the jury* making that finding, the evidence should be admitted. The court does not have have to make that finding as a threshold to admission. *See also United States v. Crawford*, 23-cr-426 (JEB), June 18, 2024 Tr. at 3:22-4:7.

## II. The Defendant's Motion is Premature

The parties have not begun presenting evidence, and no witnesses have testified. Thus, the defendant's motion is premature since the government has not had an opportunity to authenticate the disputed evidence. Moreover, the defendant's motion is entirely speculative since he has not heard the testimony of witnesses who will lay a foundation to authenticate the challenged evidence.

## III. The Government's Witnesses Will Properly Authenticate the Challenged Evidence

To begin, any witness with knowledge of the events depicted in a photograph or video can authenticate the evidence. *See* Fed. R. Evid. 901(b)(1). Here, that could include any person who was present for the events depicted in the photograph or video and has a recollection sufficient for them to recognize the scene depicted. *See, e.g., Am. Wrecking Corp. v. Sec'y of Lab.*, 351 F.3d 1254, 1262 (D.C. Cir. 2003). But even a person who *was not present* for a specific event, or *did not take the video or photograph* of can circumstantially establish the authenticity of a photograph

or video depicting that event if they can: (1) identify the location(s) depicted in the video; and (2) establish that the video is generally consistent with their knowledge of events that occurred during the Capitol riot. *See, e.g.*, *United States v. Rembert*, 863 F.2d 1023, 1028 (D.C. Cir. 1988) ("Even if direct testimony as to foundation matters is absent … the contents of a photograph itself, together with such other circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence." (quoting *United States v. Stearns*, 550 F.2d 1167, 1171 (9th Cir. 1977) (Kennedy, J))). Here, the government will authenticate the contested exhibits through U.S. Capitol Police Captain Rani Brooks, an experienced Capitol Police officer who is familiar with all areas of the Capitol and who knows that the events of January 6 since she was there on the Capitol grounds during the riot. The government may also use other witnesses, such as its Case Agent, to authenticate the exhibits. And while the defendant spills much ink arguing that it is not known who created the videos, that is not required for a witness with knowledge to authenticate evidence. *See, e.g.*, *United States v. Holmquist,* 36 F.3d 154, 169 (1st Cir. 1994) ("A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication *even without the testimony of the photographer or some other person who was present at the time it was taken*." (emphasis added)).

Further, Rule 901(b)(4) allows a witness to rely on "the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" to authenticate evidence. The events at the Capitol on January 6, 2021, had never occurred in our nation's history prior to that day, and are thus readily identifiable. But aside from the historical nature of the crimes committed, the particularity of the ongoing construction in preparation for the presidential inauguration and the creation of the restricted perimeter formed the

backdrop for that event. Captain Brooks will testify to the unique characteristics of the day which are present in the challenged exhibits, and of which she has personal knowledge.

In *United States v. Haight*, 892 F.3d 1271 (D.C. Cir 2018) (abrogated on other grounds), the Court of Appeals upheld the district court's authenticity ruling regarding a handwritten writing. "The Government established that Haight's name appeared on the writings and that the writings were in a backpack that also contained Haight's employment papers." *Haight*, 892 F.3d at 1277. In that scenario, the Court of Appeals held the court did not abuse its discretion in admitting the handwritten writing because, "That authentication evidence could include the 'appearance, contents, substance, internal patterns, or other distinctive characteristics' of the writings, 'taken together with all the circumstances.'" *Id*. (quoting Fed. R. Evid. 901(b)(4)). Thus the content within the writing provided support that the exhibit was what the proponent claimed it to be. *See also United States v. Safavian*, 435 F. Supp.2d 36 (D.D.C. 2006) (authenticating emails based on "distinctive characteristics" and citing Fed. R. Evid. 901(b)(4)); *Klayman v. Judicial Watch*, 299 F. Supp. 3d 141 (D.D.C. 2018) (admitting emails and advertisements by comparing later versions with admitted versions).

In the present case, the content of the videos depicts unique events that only occurred at the United States Capitol once in its history. Further, key attributes such as the flags, the existence of temporary structures, and clothing worn by other individuals provide a sufficient basis to conclude that the exhibits are what the government claims them to be—videos from the Southwest and Northwest Stairs, and Upper West Terrace, of the Capitol on January 6, 2021. Of course, the defendant himself appears in all of the challenged 600 series videos wearing his distinctive clothing from that day. And again, authentication is a low bar that requires only prima facie

showing that the evidence is what the government purports it to be—namely, photographs and videos of the Capitol siege in progress.

In *United States v. Crawford*, 23-cr-426 (JEB), another January 6 case, the defendant similarly challenged the authenticity of the government's open-source video exhibits, using the exact same arguments the defendant does here; indeed, Mr. Fuller's argument appears to be an identical copy of that defendant's brief. ECF No. 64. Specifically, the defendant in *Crawford* argued that "Mr. Crawford has no knowledge of who captured, created, or edited the videos, and no knowledge of how they came into the Government's possession;" "the Government has in no way established that the unidentified video creators accurately and fairly captured the scenes, individuals, events, and sounds portrayed, or that they accurately preserved the recordings in original and un-doctored form;" and "[t]he ease and likelihood with which a video creator may now" edit images "is much greater with the widespread proliferation of advanced video editing and Artificial Intelligence (AI) technology." *Id.* at 1-2. As such, the defendant argued that authenticating the government's open-source video exhibits through its U.S. Capitol Police overview witness under Rule 901(b)(4) was not sufficient. *Id*. at 7.

Chief Judge Boasberg rejected Crawford's arguments. The court began from the proposition that "the threshold for the Court's determination of authenticity under Rule 901 is not high," and noted that it "need not find that the evidence is necessarily what the proponent claims, but only that there's sufficient evidence that the jury might ultimately do so." *Id*., June 18, 2024 Tr. at 3:23-25; 4:11-13. The Court then found that "the videos here are internally consistent," and were consistent "with other admitted footage and photographs and footage I have seen elsewhere in these cases. *Id*. at 4:10-13. The same is true for the challenged exhibits here. As far as the defendant's arguments, the court noted that, much like Mr. Fuller, the defendant there never

claimed that these videos were not taken the Capitol, or were taken on some other day, and he never argued how the videos could be doctored. *Id*. at 4:14-5:4. Thus the defendant's argument boiled down to, as here, that the person who authenticated the videos did not take the video or personally witness what happened in them. *Id*. at 4:14-5:7. The Court agreed that this was "true," but then admitted the exhibits under Rule 901 anyway, finding that the government's authentication by its overview witness was sufficient. *Id.* at 5:7-9. The government intends to use the same process found satisfactory in *Crawford* here.

The government also notes that as far as the quote taken from Judge Leon in *United States v. Montano Alvarado*, 21-cr-154 (RJL) ECF No. 71 at 9, which the defendant in *Crawford* also cited on, that came during a brief colloquy regarding a potential ethical violation by defense counsel, where Judge Leon made clear that the challenge was not unethical. As far as the other support the defendant musters, *Gray v. Perry*, 2019 WL 2992007, at *17 (C.D. Cal. July 5, 2019)— which, again, the defendant in *Crawford* also relied on—that is a ruling on a *Daubert* motion regarding comparative audio analyses of YouTube videos where multiple music tracks are combined. This, obviously, is not a *Daubert* motion, and the challenged exhibits are not mashups.

In addition to authentication under Rules 901(b)(1) and (4), the government's witnesses may authenticate the challenged exhibits by reference to other, already-authenticated exhibits, such as Officer Body Worn Camera, depicting the same time and place. This method of authentication by comparison is routine. *United States v. Hoyt*, 946 F.2d 127, at *1 (D.C. Cir. 1991) (noting that Fed. R. Evid. 901(b)(3) permits authentication by comparison); *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1371 (Fed. Cir. Aug. 17, 2021); *Stearns*, 550 F.2d at 1171-72 (finding that first picture "authenticates the other four pictures as to time"); *Safavian*, 435 F. Supp. 2d at 40 (allowing authentication of emails by means of comparison with other "emails that already have been

independently authenticated"). The fact finder can also compare the challenged exhibits with an "authenticated specimen," such as the body worn camera and CCTV videos stipulated to by the parties.

At its bottom, the defendant's argument goes to the weight of the evidence, not the admissibility of the challenged exhibits. The defendant, of course, is free to cross examine the witness about the possibility of alterations, and to raise that point to the jury. While the Federal Rules of Evidence allow exhibits to be admitted once the government satisfies its low threshold under Rule 901, they do not prevent the defense from arguing that the jury should discount the weight of the exhibits.

The government also notes that while the defendant complains that certain logos may now be redacted or are missing, the government redacted certain indicators and titles in 600 series exhibits in response to complaints from the defendant that they were prejudicial, and the government informed the defendant of such changes.

### IV.   The Challenged Exhibits Are Not Unfairly Prejudicial

The defendant also makes the conclusory claim, without any argument, that the challenged exhibits are prejudicial because he challenges their authenticity. That is clearly not the standard under Federal Rule of Evidence 403. ECF No. 136 at 5-6.

As to Exhibit 610 specifically, the defendant states that because the video shows the behavior of other rioters which he claims is "much worse" than his own, this is prejudicial. ECF No. 136 at 6. Exhibit 610 is video taken by an Arlington County Police Department Officer, which shows the crowd of rioters, including the defendant, attacking a police line.[1] As this Court has

---

[1] Regarding Exhibit 610's authenticity, in response to the defendant's motion, the government secured a Rule 902(11) Certificate of Authenticity from the Arlington County Police Department for this exhibit, which it will introduce at trial.

noted previously in this case in response to earlier motions from the defendant, such evidence is more probative than prejudicial, not only because it shows the defendant's obstructive acts, but also because Count One requires that the government prove that the civil disorder—not Mr. Fuller—obstructed, delayed, or adversely affected the performance of a federally protected function. *See* ECF 105 at 8-10.

Finally, as to Exhibits 9, 9A, 9B, 9C, 9D, and 9E, these are images of the bike racks, snow fencing, and Area Closed signs which ringed the Capitol and have been routinely admitted in hundreds of January 6 cases. The exhibits will be offered to demonstrate that the Capitol grounds were restricted on January 6, which is plainly probative of Counts Two, Three, and Four. As far as any concerns regarding timing when the photos were taken, the government's witness will make clear that the images were taken before rioters fully breached the restricted perimeter, and Kenneth Fuller may cross examine the witnesses to elicit further details as he wishes. The challenged exhibits are clearly more probative than prejudicial.

V.  **Exhibit 5 Does Not Contain Hearsay**

Government's Exhibit 5 is the redline map representing the boundaries of the restricted perimeter on January 6. The defendant states that this exhibit is hearsay, but then he provides no rationale for the claim. ECF No 136 at 6. Hearsay is an out of court statement offered to prove the truth of the matter asserted. Exhibit 5, however, will be offered during in-court testimony, and it is a visual depiction of testimony the witness will offer. The exhibit is thus no different than asking the witness to draw a line on the monitor after admitting the underlying bare map, which the defendant has not objected to. The foundation for the exhibit will be laid by a witness with knowledge of the boundaries of the restricted perimeter, as well as the fencing and barricades which made up that perimeter. The exhibit is thus not hearsay.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the defendant's motion.

Date: January 16, 2025

                                Respectfully submitted,

                                MATTHEW M. GRAVES
                                United States Attorney
                                D.C. Bar No. 481052

By:                  */s/ Matthew E Vigeant*
                                MATTHEW E. VIGEANT
                                Assistant United States Attorney
                                D.C. Bar No. 144722
                                U.S. Attorney's Office for the District of Columbia
                                601 D Street, N.W.,
                                Washington, D.C. 20530
                                Phone: (202) 252-2423
                                Email: Matthew.Vigeant@usdoj.gov

                                CYTHERIA D. JERNIGAN
                                Assistant U.S. Attorney
                                D.C. Bar No. 494742
                                Detailed to the United States Attorney's Office
                                for the District of Columbia
                                601 D Street, NW
                                Washington, D.C. 20530
                                Phone: (318) 676-3611
                                Cytheria.Jernigan@usdoj.gov